# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-KA-01207-COA

**MICHAEL DONALDSON A/K/A MICHAEL PAUL DONALDSON A/K/A MIKE DONALDSON**                                        **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:          02/02/2015
TRIAL JUDGE:               HON. WILLIAM E. CHAPMAN III
COURT FROM WHICH APPEALED: RANKIN COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:   JULIE ANN EPPS
                           CYNTHIA ANN STEWART
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY: KATY TAYLOR GERBER
DISTRICT ATTORNEY:         MICHAEL GUEST
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:               AFFIRMED: 06/19/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Michael Donaldson was convicted of possession of child pornography and filming a person in violation of expectation of privacy. We find no error and affirm.

## FACTS

¶2.     During an investigation for child pornography, the Mississippi Attorney General's Cyber Crime Unit (the "Cyber Crime Unit"), through Investigator Kyle Moore, obtained a warrant to search Donaldson's residence. Investigators seized over thirty items of digital evidence; these items included a Dell laptop that was found on the toilet in the master

bathroom ("Laptop 1") and a Dell laptop that was found in Donaldson's work vehicle ("Laptop 2").

¶3.     The Cyber Crime Unit determined that the laptops contained over one hundred child pornography videos and images. On Laptop 1, they discovered a folder that contained three videos and one JPEG image. Investigator Joseph Turnage, of the Cyber Crime Unit, testified that two of the videos depicted Donaldson turning the webcam software on and off.

¶4.     The third video depicted Donaldson in his bathroom; he turned on the webcam, put it on the floor, and pointed the camera at the toilet. He then pretended to flush the toilet and opened the bathroom door. It also included an audio recording of his conversation with MB, who was a fourteen year old girl at the time of trial.[1] MB then entered the bathroom, and Donaldson instructed her not to touch the laptop. Donaldson said that he was downloading something from the internet and that the bathroom was the only place in the house where it could download. The bathroom door then closed. The video then shows MB pull her pants down, and the webcam captures her genitalia as she used the bathroom. The video ended with a conversation between Donaldson and MB about the toilet paper, and MB said that she could not flush the toilet. Donaldson told MB not to worry. After she pulled her pants up, MB exited the bathroom. Donaldson immediately entered the bathroom, flushed the toilet, picked up the laptop, and stopped the webcam recording.

¶5.     Investigator Turnage testified that MB did not touch the laptop. When Donaldson picked up the laptop, the video showed "a brightness on [Donaldson's] face" from the

---

[1] We use initials to protect the minor's identity.

computer screen. Investigator Turnage testified that this indicated that Donaldson had minimized the webcam before MB entered the bathroom, so that she could not see that the laptop was recording her.

¶6. Donaldson was indicted for possession of child pornography, a violation of Mississippi Code Annotated section 97-5-33(5) (Supp. 2013) (Count I), and filming a person in violation of expectation of privacy, a violation of Mississippi Code Annotated section 97-29-63 (Supp. 2015) (Count II). The jury found Donaldson guilty of both counts.

¶7. Donaldson was sentenced, on Count I, to serve forty years in the custody of the Mississippi Department of Corrections, with ten years suspended and five years of supervised probation. On Count II, Donaldson was sentenced to serve five years, and the sentence was to run consecutively to his sentence for Count I. Donaldson was also ordered to pay a $50,000 fine within ninety days of release, $1,000 to the Children's Trust Fund, and $1,000 to the Victim's Compensation Fund.

¶8. Donaldson's motion for a judgment notwithstanding the verdict (JNOV), or in the alternative, a new trial was denied. Donaldson now appeals.

**ANALYSIS**

> 1. *The trial court committed reversible error to preclude Donaldson from testifying as an expert witness.*

¶9. Donaldson first argues the trial court erred when it ruled that he could not testify as an expert in computer forensics or in any computer field. Donaldson wanted to testify as an expert to contest the State's expert witnesses who offered testimony that Donaldson placed the pornographic images on his computer.

3

¶10. "This Court uses an abuse of discretion standard for decisions to exclude expert testimony." *T.L. Wallace Constr., Inc. v. McArthur, Thames, Slay, & Dews PLLC*, 234 So. 3d 312, 329 (¶64) (Miss. 2017). "This Court will not reverse the decision of the trial judge unless that decision 'was arbitrary and clearly erroneous, amounting to an abuse of discretion.'" *Id.* at 332 (¶76).

¶11. Rule 702 of the Mississippi Rules of Evidence provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a)     the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b)     the testimony is based on sufficient facts or data;
>
> (c)     the testimony is the product of reliable principles and methods; and
>
> (d)     the expert has reliably applied the principles and methods to the facts of the case.

Mississippi courts apply "the federal standard established in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993) to the admissibility of expert testimony pursuant to Rule 702." *T.L. Wallace Constr., Inc.*, 234 So. 3d at 333 (¶78).

¶12. Rule 702 requires the trial court to consider six principles necessary to admit expert witness testimony. First, the court must determine that the witness intends to offer "expert" testimony. M.R.E. 701 & 702. Second, the witness must be "qualified as an expert by knowledge, skill, experience, training, or education." M.R.E. 702. Third, the court must determine that the expert testimony must "help the trier of fact to understand the evidence

4

or to determine a fact in issue." M.R.E. 702(a). Fourth, the court must determine that the expert's "testimony is based on sufficient facts or data." M.R.E. 702(b). Fifth, the court must determine that the expert's "testimony is the product of reliable principles and methods." M.R.E. 702(c). And, sixth, the court must determine that "the expert has reliably applied the principles and methods to the facts of the case." M.R.E. 702(d).

¶13. Here, the trial court held a *Daubert* hearing and considered whether Donaldson would be allowed to testify as an expert witness. The trial court found two reasons to exclude Donaldson's testimony.

¶14. First, Donaldson would not be allowed to testify as an expert witness because his counsel failed to comply with the discovery requirements. Donaldson's counsel did not provide the proper designation of an expert witness to identify Donaldson or disclose the opinions, reports, and statements that he might offer at trial. *Bowie v. Montfort Jones Mem'l Hosp.*, 861 So. 2d 1037, 1042 (¶14) (Miss. 2003). We find no abuse of discretion and no reversible error in this ruling.

¶15. Nevertheless, the second reason the court gave to exclude Donaldson's expert testimony was that he was not "qualified" as an expert witness. Because we hold the first reason was sufficient to exclude Donaldson as an expert witness, it is not necessary to address the second reason. Therefore, we find no error in the exclusion of Donaldson's testimony as an expert witness.

> 2. *The evidence was insufficient to support the verdict on Count I –*
> *possession of child pornography.*

¶16. Donaldson next argues that there was insufficient evidence to support the verdict on

5

Count I, possession of child pornography. In the review of the sufficiency of the evidence, this Court "view[s] the evidence in the light most favorable to the [State]" and asks whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Harris v. State*, 107 So. 3d 1075, 1077-78 (¶10) (Miss. Ct. App. 2013) (citation omitted). This Court "accept[s] all credible evidence consistent with guilt as true and give[s] the State the benefit of all favorable inferences reasonably drawn from the evidence." *Moore v. State*, 160 So. 3d 728, 735 (¶31) (Miss. Ct. App. 2015) (internal quotation marks omitted).

¶17. To find Donaldson guilty of possession of child pornography, the jury had to find that Donaldson "possess[ed] . . . any . . . visual depiction of an actual child engaging in sexually explicit conduct." Miss. Code Ann. § 97-5-33(5). In child pornography cases, possession may be either actual or constructive. *United States v. Terrell*, 700 F.3d 755, 765 (5th Cir. 2012).

¶18. Here, the Cyber Crime Unit discovered that a person using the internet protocol (IP) address 68.222.69.53 downloaded a large number of suspected child pornography files. Three of the files were examined and determined to be child pornography. A subpoena was issued to AT&T, and it determined that the IP address was assigned to Donaldson at his address in Pearl, Mississippi.

¶19. After the execution of the search warrant, Investigator Turnage reviewed the evidence seized to confirm that child pornography was on one of Donaldson's laptops. During a forensic examination of Laptop 1 in the Cyber Crime Unit's lab, Investigator Turnage found

a total of 157 child pornography videos and 16 child pornography images. Samples of these files were shown to the jury.

¶20. Donaldson argued there was no evidence that he knowingly possessed the child pornography files. Miss. Code Ann. § 97-5-33(5). Regardless, Investigator Turnage found a majority of the files in a folder titled "save" and another folder titled "my pictures" that contained cell-phone images depicting Donaldson and people known to associate with Donaldson. Both folders were located inside another folder titled "bin," which was placed outside the user account. On the morning the search warrant was executed, child pornography files were accessed between 6:01 a.m. and 6:38 a.m., while investigators conducted surveillance of Donaldson's house and Donaldson was the only person inside.

¶21. We find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Therefore, we find no merit to this issue.

> 3. *The State failed to prove MB was recorded within the two-year statute of limitations.*

¶22. Donaldson next claims that the two-year statute of limitations for section 97-29-63 bars the prosecution of Count II, filming a person in violation of their expectation of privacy. Section 97-29-63(1)(a) provides as follows:

> It is a felony for any person with lewd, licentious or indecent intent to photograph, film, videotape, record or otherwise reproduces the image of another person without the permission of the other person when the other person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, . . . used as a restroom, [or] bathroom . . . shall be guilty of a felony.

¶23. The indictment charged Donaldson with secretly recording MB on October 29, 2011.

7

He was arrested for this charge on November 4, 2011. Donaldson argues that MB's parents testified that the video was not created on October 29, 2011, but was recorded years earlier.

¶24. Mississippi Code Annotated section 99-1-5 (Supp. 2013) provides that "[a] person shall not be prosecuted for any other offense not listed in this section unless the prosecution for the offense is commenced within two (2) years next after the commission thereof." Since MB's parents testified that they believed the video was filmed more than two years before November 4, 2011, Donaldson argues that the statute of limitations bars this prosecution.

¶25. Donaldson addressed this issue in his motion for a directed verdict, which was denied. When the motion for a directed verdict was made, MB's parents had yet to testify. Instead, the only evidence as to the date the recording was created came from Investigator Turnage, who testified that the video was created on October 28, 2011.

¶26. Donaldson called MB's parents to testify. MB was born in 2002. MB's parents testified that they believed MB was only seven or eight years old at the time the video was recorded. This conflicts with Investigator Turnage's testimony that the video was recorded on October 28, 2011, because MB would have been at least nine years old at that time.

¶27. At the close of the trial, Donaldson again made a motion to dismiss Count II of the indictment. He argued that the video was created more than two years before November 4, 2011, and the State failed to meet its burden to prove that Donaldson recorded MB within the two-year time period for the offense.

¶28. A directed verdict "challenge[s] the sufficiency of the evidence presented to the jury." *Goldsmith v. State*, 195 So. 3d 207, 212 (¶16) (Miss. Ct. App. 2016). To review the denial

of a motion for a directed verdict, "[t]his Court will consider the evidence in the light most favorable to the State, giving the State the benefit of all favorable inferences that may reasonably be drawn from the evidence." *Id*. (internal quotation marks omitted). We have held that "[i]f any rational trier of fact, when viewing the evidence in the light most favorable to the State, could have found that the essential elements of the crime existed beyond a reasonable doubt, this Court will affirm the denial of a motion for a directed verdict." *Moten v. State*, 20 So. 3d 757, 759 (¶5) (Miss. Ct. App. 2009). The evidence is deemed sufficient if this Court finds that "reasonable, fair-minded jurors could have concluded that the defendant was guilty of the accused crime." *Id*. at 759-60 (¶5). Additionally, we recognize that "the State bears the burden to prove that an offense occurred within the statute of limitations." *Nuckolls v. State*, 179 So. 3d 1046, 1051 (¶19) (Miss. 2015).

¶29. Count II of Donaldson's indictment charged:

> On or about October 28, 2011, . . . [Donaldson] did with lewd, licentious and indecent intent secretly photograph, film, videotape, record and otherwise reproduce the image of another person without the permission of such person when such a person was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including but not limited to any facility, public or private, used as a restroom or bathroom: namely that [Donaldson], with lewd, licentious and indecent intent secretly filmed, videotaped, and recorded [MB] without her permission when she was located in a bathroom and had an expectation of privacy, all in violation of [section] 97-29-63 . . . .

¶30. First, after the State rested, Donaldson made a motion for a directed verdict and claimed that the State failed to meet its burden of proof. The State responded that as to the elements of Count II, there was sufficient admissible evidence: (1) Investigator Turnage "stated that the creation date of said video was October 28th, 2011," and "he identified that

9

[Donaldson] was the one who created that video, that it was made in his bathroom located in Rankin County"; (2) Investigator Turnage's testimony also showed that Donaldson recorded and possessed the video; and (3) MB testified that "she did not know of any video ever being made, that she never used [Donaldson's] computer, [and] that she had no knowledge of any videos."

¶31. We find that the jury could have found beyond a reasonable doubt that Donaldson recorded the video of MB on October 28, 2011, well within two years of November 4, 2011. Therefore, the trial court was not in error when it denied Donaldson's motion for a directed verdict after the State's case-in-chief.

¶32. Donaldson also moved to dismiss after the defense's case-in-chief and the State's rebuttal case. Donaldson argued that MB's parents testified that the video could not have been made on October 28, 2011 (the date set forth in the indictment as the date of creation); rather, they testified that the video must have been made in 2009. The State argued that there was evidence to support a finding that Donaldson created the video on October 28, 2011. The court denied the motion.

¶33. We employ a "substantial-evidence/manifest-error standard" of review to a trial court's grant or denial of a motion to dismiss an indictment. *Beal v. State*, 86 So. 3d 887, 891 (¶9) (Miss. 2012). We review de novo any challenges to the legal sufficiency of an indictment. *Id*.

¶34. Donaldson claims that the "creation" date does not mean the video was recorded on that date. He asserts that the only evidence admitted about MB's age at the time the video

10

was filmed or recorded clearly indicates that the video could have been recorded prior to November 2009. MB's father testified that, at the time the video was made, MB "had her baby teeth" and "was seven or eight" years old. He said that the video was not made in 2011. Instead, he believed the video was made when MB was younger. However, MB's father clarified that he was "not positive on the age stuff." MB's mother also testified that MB appeared to be seven or eight years old in the video. MB was seven years old in 2009 and eight years old in 2010.

¶35. Investigator Turnage testified that the video was created on October 28, 2011. He explained the difference between creation and access dates. He then clarified that the recording of MB was made on the evening of October 28, 2011. On that day, Donaldson saved the video to his hard drive.

¶36. We find there was substantial evidence in the record to support the denial of the motion to dismiss. Therefore, we find no merit to this issue.

4. *The jury instructions on Count II failed to require jurors to find the essential element of intent.*

¶37. Donaldson further argues that Instruction S-2A, the instruction on Count II, omitted the element of "intent" from the charge of secretly recording MB with "lewd, licentious and indecent intent." Donaldson maintains that this omission constitutes reversible error.[2]

¶38. "Jury instructions are generally within the discretion of the trial court[,] and the settled

---

[2] Donaldson also argues that his proposed jury instruction for Count II, jury instruction AD-14, properly included the word "intent" and was erroneously withdrawn. However, the transcript reflects that Donaldson withdrew the instruction. The supreme court has held that "[a] defendant cannot complain on appeal of alleged errors invited or induced by himself." *Caston v. State*, 823 So. 2d 473, 502 (¶101) (Miss. 2002).

standard of review is abuse of discretion." *Moody v. State*, 202 So. 3d 1235, 1236-37 (¶7) (Miss. 2016). When we review a challenge to a jury instruction on appeal, we read the jury instructions "as a whole to determine if the jury was properly instructed." *Windless v. State*, 185 So. 3d 956, 960 (¶8) (Miss. 2015). The supreme court has held that no reversible error will be found when the jury instructions "taken as a whole fairly—although not perfectly—announce the applicable primary rules of law[.]" *Moody*, 202 So. 3d at 1237 (¶7).

¶39. "[T]he State is responsible for making sure the jury is instructed on the essential elements of the crime." *Harrell v. State*, 134 So. 3d 266, 270 (¶14) (Miss. 2014). "[I]t is always and in every case reversible error for the courts of Mississippi to deny an accused the right to have a jury decide guilt as to each and every element." *Id*. at 275 (¶30).

¶40. Donaldson was indicted under section 97-29-63. This statute lists four elements to the crime of filming a person in violation of expectation of privacy:

> (1) intent—lewd, licentious or indecent intent; (2) act—secretly photographing, filming, videotaping, recording or otherwise; (3) lack of consent—without the permission of the victim; and (4) protected location—when such a person is located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including, but not limited to, private dwellings or any facility, public or private, used as a restroom [or] bathroom[.]"

*Gilmer v. State*, 955 So. 2d 829, 834 (¶11) (Miss. 2007).

¶41. At the jury instruction conference, the State's proposed jury instruction S-2 read:

> If you find from the evidence in this case beyond a reasonable doubt that:

> 1.      Michael Donaldson, on or about October 28, 2011, in Rankin County, Mississippi and within the jurisdiction of this Court;

> 2.      Did with lewd, licentious and indecent intent;

12

3.     Secretly photograph, film, videotape, record or otherwise reproduce the image of another person;

4.     Without the permission of such person;

5.     When such a person was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including but not limited to any facility, public or private, used as a restroom or bathroom;

6.     Namely, that Michael Donaldson, with lewd, licentious, and indecent intent secretly filmed, videotaped or recorded M.B. without her permission when she was located in a bathroom and had an expectation of privacy.

Then it is your sworn duty to find Michael Donaldson GUILTY of photographing or filming another without permission where there is expectation of privacy, in Count II.

If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then it is your sworn duty to find Michael Donaldson NOT GUILTY in Count II.

¶42. The court instructed the parties to modify proposed instruction S-2 to incorporate the wording from paragraph six into the other paragraphs, and to change the word "person" to "MB." The trial court then renamed the modified jury instruction "S-2A." Instruction S-2A provided, in pertinent part, as follows:

If you find from the evidence in this case beyond a reasonable doubt that:

1.     Michael Donaldson, on or about October 28, 2011, in Rankin County, Mississippi, and within the jurisdiction of this Court;

2.     Did with lewd, licentious and indecent;

3.     Secretly photograph, film, videotape, record or otherwise reproduce the image of MB;

13

4.     Without the permission of MB;

5.     When MB was located in a place where a person would intend to be in a state of undress and have a reasonable expectation of privacy, including but not limited to any facility, public or private, used as a restroom or bathroom;

Then it is your sworn duty to find Michael Donaldson GUILTY of photographing or filming another without permission where there is expectation of privacy, in Court II.

If the prosecution has failed to prove any one or more of the above listed elements beyond a reasonable doubt, then it is your sworn duty to find Michael Donaldson NOT GUILTY in Count II.

The word "intent" was inadvertently omitted from paragraph two in the modification.

¶43.   However, Donaldson did not object to jury instruction S-2A at trial. "Ordinarily, failure to object to a given instruction at trial results in a procedural bar on appeal, unless its granting amounts to plain error." *Berry v. State*, 728 So. 2d 568, 571 (¶6) (Miss. 1999). In *Berry*, the supreme court held that granting a jury instruction that did not fully instruct the jury on the elements of the crime amounted to plain error, even where the defendant failed to object to the instruction at trial. *Id*. (citing *Hunter v. State*, 684 So. 2d 625, 636 (Miss. 1996), for the proposition that "[f]ailure to submit to the jury the essential elements of the crime is 'fundamental' error"). The *Berry* court determined that since "reading the instructions as a whole did not cure the error resulting from the improper instruction," the case required reversal. *Id*. at (¶9).

¶44.   "To determine if plain error has occurred, this Court must determine if the trial court has deviated from a legal rule, whether that error is plain, clear or obvious, and whether the error has prejudiced the outcome of the trial." *Brown v. State*, 75 So. 3d 573, 577 (¶16)

14

(Miss. Ct. App. 2011).

¶45.   Although jury instruction S-2A omitted the word "intent," we find that the instruction still properly described the type of intent required under section 97-29-63. Additionally, we find that the jury instructions as a whole fairly announce the law and therefore cured any error caused by the omission of the word "intent" from jury instruction S-2A. *Moody*, 202 So. 3d at 1237 (¶7). During closing arguments, Donaldson's counsel argued that the State must prove that Donaldson filmed MB with "lewd, licentious, and indecent intent." We find no error in this issue.

> 5.   *The denial of Donaldson's request for a circumstantial evidence instruction on Count I warrants a new trial.*

¶46.   Donaldson argues that the court erred in denying his request for a circumstantial evidence jury instruction and a two-theory jury instruction. At the jury instruction conference, Donaldson asked for a circumstantial evidence instruction (Instruction D-7):

> The court instructs the jury that if the State has relied on circumstantial evidence to establish its theory of guilt of the defendant, Michael Donaldson, then the evidence for the State must be so strong as to establish the guilt of the defendant, not only beyond a reasonable doubt, but the evidence must be so strong as to exclude every other reasonable hypothesis other than that of guilt.

¶47.   Donaldson argued that because no one witnessed him in direct possession of child pornography, the State's case was based purely on circumstantial evidence. The State noted that the jury heard testimony that Donaldson accessed the child pornography files on the morning of the search, to which Donaldson's counsel responded, "[n]obody saw him." The court then stated: "I'm not so sure that simply because nobody saw him means it's a circumstantial evidence case. [Donaldson] was at the house. There's no testimony that

15

anybody else was there. There's testimony the computer was accessed then." The trial court determined that "[i]t seems like . . . that's direct evidence," and denied the instruction.

¶48. Donaldson claims that since he did not confess to any crimes and the State failed to present direct evidence of his guilt, he was entitled to receive a circumstantial evidence jury instruction. Donaldson maintains that he presented evidence to show that his home Wi-Fi connection was not secure and could have been accessed by someone outside the house. Indeed, Donaldson testified that he allowed a neighbor to use his Wi-Fi.

¶49. Circumstantial evidence is defined as "evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist." *Burleson*, 166 So. 3d at 509 (¶29). In contrast, direct evidence "must directly and not by inference implicate the accused[,] and not just show that there has been a crime." *Id*. "[E]xamples of direct evidence include an admission or confession by the defendant to a significant element of the offense, or eyewitness testimony to the gravamen[, or substantial point or essence,] of the offense charged." *Id*. (internal quotation marks omitted). "Where the State is without a confession and wholly without eyewitness testimony to the gravamen of the offense charged, the defendant is entitled to an instruction requiring the jury to exclude every other reasonable hypothesis other than that of guilt before a conviction can be had." *Id*. (internal quotation marks omitted).

¶50. The evidence established that someone accessed child pornography on Donaldson's computer on the morning the search warrant was executed. The evidence established that Donaldson was alone in his house at the time the child pornography was accessed. The jury

16

saw the video of MB using the bathroom. It showed Donaldson setting up the computer before MB entered, and then shows Donaldson entering the bathroom again after MB exited. We find no abuse of discretion in the denial of jury instruction D-7.

¶51. Donaldson then submitted his two-theory circumstantial evidence instruction, Instruction D-8:

> The court instructs the jury that if there be a fact or circumstance in this case which is susceptible of two interpretations, one favorable and the other unfavorable to the defendant, Michael Donaldson, and if after considering all the other facts and circumstances there is reasonable doubt regarding the correct interpretation, then you, the jury, must resolve such doubt in favor of the accused, and place upon such fact or circumstance the interpretation most favorable to the defendant.

After the State objected, the trial court denied the instruction. The court explained, "I think it gets to a circumstantial evidence case, and it's an attempt to define reasonable doubt."

¶52. The supreme court has held that "where the case is based on purely circumstantial evidence, that the defendant is entitled to a two-theory instruction, as well as the general circumstantial-evidence instruction." *Goff v. State*, 14 So. 3d 625, 660 (¶151) (Miss. 2009). In *Johnson v. State*, 235 So. 3d 1404, 1412-13 (¶24) (Miss. 2017), the supreme court recently clarified that "in order to receive the two-theory, special, circumstantial-evidence instruction, two reasonable hypotheses or theories must be presented to the jury: one theory showing how the evidence illustrates the defendant's innocence and the other theory showing how the same evidence illustrates the defendant's guilt." (citing *McInnis v. State*, 61 So. 3d 872, 875 (Miss. 2011)).

¶53. The State presented the video that showed Donaldson in possession of the laptop just

before recording MB. There was also evidence that Donaldson was alone at the house at the time child pornography was accessed on his computer. Therefore, we find that the State's case was not based on purely circumstantial evidence. Accordingly, Donaldson was not entitled to a two-theory jury instruction. We find no error in the denial of Instruction D-8.

> 6. *The court committed reversible error by not excluding evidence about images on the cell phone.*

¶54. Donaldson next argues that it was error to allow testimony about images obtained from his cell phone. Donaldson claims that he was prejudiced by the State's failure to timely provide the cell phone evidence and, as a result, the admission of the testimony regarding the cell phone evidence amounted to reversible error.

¶55. "A trial court's decision to admit evidence . . . is reviewed on appeal for an abuse of discretion." *Jones v. State*, 918 So. 2d 1220, 1223 (¶9) (Miss. 2005). "Unless we can safely say that the trial court abused its judicial discretion in allowing or disallowing evidence so as to prejudice . . . the accused in a criminal case, we will affirm the trial court's ruling." *Id*.

¶56. Investigator Turnage testified about the execution of the search warrant of Donaldson's residence. Donaldson's Blackberry cell phone was seized, and Investigator Turnage was able to link the cell phone to some of the image files found on Laptop 1. Specifically, Investigator Turnage explained that he found a folder on Laptop 1 containing images of Donaldson, as well as images of people who were known to associate with Donaldson, and these images were taken with the cell phone.

¶57. Donaldson argued that the defense had not received any information during discovery about a cell phone or any images taken with the cell phone. The State assured the court that

18

it would not seek to admit into evidence any pictures taken with the cell phone, and that it was only offering the testimony about the cell phone to show ownership or control. Donaldson responded that he was not given an opportunity to inspect the cell phone during discovery. The State argued that Donaldson came to the Cyber Crime Unit's office during the discovery period and had full access to the evidence in the matter. However, Donaldson stated that when he "asked [the AG's office] for anything on his cell phone, . . . he was denied the right to examine his cell phone."

¶58. Donaldson also informed the court that when he asked if he could examine the pictures contained on his cell phone, the State responded that they "cannot image a cell phone or a Blackberry." Donaldson then argued that he felt "ambushed" by the State's testimony regarding the cell-phone images, because the defense was unaware of the existence of any pictures taken by Donaldson's cell phone on the hard drive of Laptop 1. The court ordered the State to allow Donaldson to examine the cell phone "under the conditions that won't destroy the evidence on the phone." Donaldson claims the State failed to provide him with the cell-phone evidence until later that same day, after court had adjourned.

¶59. Uniform Rule of Circuit and County Court Practice 9.04(I) states:

> If during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these rules, and the defense objects to the introduction for that reason, the court shall act as follows:
>
> 1.    Grant the defense a reasonable opportunity to . . . examine the newly produced documents, photographs or other evidence; and
>
> 2.    If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the

19

interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence or grant a mistrial.

¶60. In *Williams v. State*, 991 So. 2d 593, 600 (¶22) (Miss. 2008), Williams argued that the court erred by admitting an audiotape into evidence that the State failed to disclose before trial. The defense objected to the admission of the audiotape based on the failure to timely disclose it during discovery. *Id*. at (¶23). The supreme court recognized that Rule 9.04(I)(1) "requires the court to grant the defense an opportunity to examine the new evidence." *Williams*, 991 So. 2d at 601 (¶27). The court found that defense counsel was provided the opportunity to listen to the tape and "allowed sufficient time to interview the witness called to present the tape." *Id*.

¶61. The court also explained that "[i]n order for the requirements of Rule 9.04(I)(2) to be invoked, the defense must (1) after such an opportunity, claim unfair surprise and (2) seek a continuance or mistrial." *Id*. at (¶28). Further, although Williams claimed unfair surprise and requested a recess, the court concluded that "he failed to seek a continuance or mistrial." *Id*. at (¶30). As a result, the court held that "[d]efense counsel . . . therefore waived arguing this issue on appeal." *Id*.

¶62. Here, Donaldson objected to the admission of any evidence regarding the cell phone due to the State's failure to timely disclose the cell phone or its stored images during discovery. The court ordered the State to allow the defense to examine the cell phone. Additionally, the record indicates that Donaldson himself cross-examined Investigator Turnage and did not request a continuance or a mistrial. Moreover, the State did not offer

20

the contents of the cell phone into evidence. As a result, Donaldson has not shown that he was prejudiced by the decision to allow evidence regarding the images found on his cell phone. We therefore find no error in this issue.

> 7. *The court erred in not allowing the defense access to the original hard drive.*

¶63. Donaldson next claims the trial court erred when it did not allow the defense an opportunity to examine the original hard drives from his laptops. Donaldson maintains that his defense depended on showing that the hard drives seized from his home had been altered, and that the pornography was added after the hard drives were in the State's custody. Donaldson asserts that this evidence would have supported his claim that the files were put on the disk after the computer was seized.

¶64. On October 19, 2012, Donaldson filed a motion for discovery that requested, among other things, "that the original of the computers(s) . . . be turned over to an independent expert to be hired by [the d]efendant for the purpose of inspecting and analyzing said evidence." After a hearing on the matter, the trial court denied the request.[3]

¶65. On March 17, 2014, Donaldson filed a motion to dismiss or suppress evidence and alleged an irregular check in and check out of the State's evidence, Laptop 1, and irregularities in the collection and preservation of the alleged evidence found on Laptop 1. At the hearing on this motion, Donaldson made an ore tenus motion to examine Laptop 1 and

---

[3] Mississippi Code Annotated section 99-1-29(1) mandates that "[i]n any criminal proceeding, evidence that constitutes child pornography . . . shall remain in the care, custody, and control of either the prosecution or the court." However, section 99-1-29 does allow for the defendant, the defendant's attorney, and the defendant's expert to inspect, view, and examine the property at a government facility.

its contents. The court said, "I'll deal with that [motion] when we get finished with this one."

¶66. The record does not reflect a ruling on Donaldson's ore tenus motion. The State argues that since the defense failed to obtain a ruling on its request to examine Laptop 1 and its contents, Donaldson abandoned his motion.

¶67. Rule 2.04 of the Uniform Rules of Circuit and County Court Practice provides: "It is the duty of the movant, when a motion or other pleading is filed, . . . to pursue said motion to hearing and decision by the court. Failure to pursue a pretrial motion to hearing and decision before trial is deemed an abandonment of that motion[.]" "[I]t is the responsibility of the movant to obtain a ruling from the court on motions . . . and failure to do so constitutes a waiver." *Smith v. State*, 986 So. 2d 290, 296 (¶16) (Miss. 2008). If a party fails to bring an issue before the trial court, the issue is "deemed waived and may not be raised for the first time on appeal." *Id*. In *Smith*, 986 So. 2d 290, 296 (¶17), the supreme court found "no record of a ruling by the trial court on [the defendant's] motion for severance nor any evidence that the motion was noticed for hearing by the defendant." The court held that "[b]y failing to pursue a hearing or ruling on the motion from the trial court, [the defendant] effectively abandoned the motion and waived this issue for appeal." *Id*.

¶68. Donaldson claims that the court did address his request to view the original hard drive when it denied the motion to dismiss. The court explained, with regard to Laptop 1, "there's just no evidence that there's any irregularities or anything that's been tampered with or that has been changed or altered in any way." Donaldson argues that since the court found no evidence to show tampering, "then it follows that the request to view the hard drive because

of tampering in the court's view also lacked evidentiary support" and was denied.

¶69. We find no order that denied Donaldson's motion to examine Laptop 1 and its contents. Donaldson also went to the Cyber Crime Unit's office before trial and was allowed to examine the State's evidence. Therefore, we find Donaldson waived this issue.

        *8.      The judge who issued the search warrant was not fair and impartial.*

¶70. Donaldson raises three issues of judicial misconduct against three judges. First, Donaldson makes a claim against the judge who issued the search warrant. He claims the search warrant was not issued by a fair and impartial judge and was therefore in violation of his right against unreasonable searches and seizures and due process.

¶71. In 2011, Donaldson lived with his brother, John. The Cyber Crime Unit was issued a search warrant signed by a Rankin County judge ("the issuing judge").

¶72. According to Donaldson, in 2004 or 2005, John's girlfriend, a Rankin County employee, was working with the court system. During this same time-frame, the issuing judge was involved in a relationship with a woman who was also a county employee. Donaldson claims that the issuing judge and the woman would visit John's residence along with John's girlfriend,[4] and John obtained compromising photographs of the issuing judge and the woman. To recover the compromising photographs, Donaldson claims that the issuing judge conspired with the Cyber Crime Unit to issue a search warrant for child pornography at John's residence.

¶73. Based on this claim, Donaldson filed a motion to dismiss the indictment or, in the

_____

     [4] There is no allegation that Donaldson was also present while the issuing judge was present in John's residence.

23

alternative, to suppress the evidence obtained as a result of the search warrant. He argued that the search warrant signed by the issuing judge was defective because he was not a fair and unbiased magistrate. Donaldson asked that the evidence obtained by the Cyber Crime Unit as a result of the search warrant be suppressed, which would result in the dismissal of the charges. A hearing on the motion was held on March 28, 2013. Circuit Judge John Emfinger was assigned the case and conducted the hearing.[5]

¶74. Investigator Moore testified that the Cyber Crime Unit has software that will identify when possible and known child-pornography media files are being shared. He testified that this investigation began when the software alerted that child pornography had been downloaded by a user with the IP address 68.222.69.53. A subpoena to AT&T determined the physical location of this IP address was located in Rankin County.[6]

---

[5] At a pre-trial hearing held on August 14, 2013, the trial court observed that the defense counsel filed a motion to suppress the evidence obtained pursuant to the search warrant on August 9, 2013. The trial court stated, "I've already heard the motion [to] suppress the search warrant" on March 28, 2013. Defense counsel clarified that the March 28, 2013 hearing was only on the motion to dismiss the search warrant, and not the motion to suppress the evidence. The trial court then ruled that the motion to suppress the evidence was not timely filed, and thus "deemed waived and abandoned." The trial court also reviewed the transcript from the March 28, 2013 hearing and informed defense counsel, "It appears that I ruled on that and denied the motion to dismiss and the motion to suppress evidence." Our review of the record also shows that during the March 28, 2013 hearing, the trial court stated, "The next motion that I see in the file is a [m]otion to [d]ismiss and a [m]otion to [s]uppress [e]vidence."

[6] At the pre-trial hearing, Investigator Houston testified about the search warrant request. He explained that he was working an undercover investigation of computers that advertised child sexual abuse images online, and he was able to identify an IP address that had advertised several known child sexual abuse images. Investigator Houston testified that he verified three of the images as child pornography. Investigator Houston then subpoenaed AT&T to obtain the IP address that was assigned to Laptop 1 at the particular date and time that the child pornography images were available for download. He said that the response

¶75.    Based on this information, the Cyber Crime Unit contacted the Rankin County Circuit Clerk's office and asked if a judge was available to consider issuing a search warrant. Investigator Moore testified that he was advised that the issuing judge was available. Investigator Moore then appeared before the issuing judge. He presented the underlying facts and circumstances and an affidavit to the issuing judge. He also requested a search warrant for Donaldson's residence. Investigator Moore testified that the search warrant only named Michael Donaldson as a suspect. He further testified that John's name was not mentioned to or considered by the issuing judge. In fact, Investigator Moore testified that he was not even aware of John's existence or that Michael Donaldson had a brother.

¶76.    The issuing judge also testified. The issuing judge testified that he reviewed the search warrant documents presented by Investigator Moore, and determined that probable cause existed to issue the search warrant of Donaldson's residence. Based on this information, the issuing judge signed the search warrant. The issuing judge also testified that he did not know Michael Donaldson and stated that if he had "known anything about Donaldson[,]" he "would not have entertained [the] warrant or . . . signed [it.]" The issuing judge was asked if he knew John Donaldson, and he responded that he had recently learned that a man he knew as "John" was related to Michael Donaldson. However, the issuing judge said that, at the time the search warrant was issued, he "couldn't have told you [John's] last name with a gun to [his] head." The issuing judge explained that he "just knew him as John." The issuing judge further testified that he knew "John" as a person who had worked

---

identified an IP address that was assigned to Donaldson.

as a prison trusty in the courthouse, he knew that John and John's girlfriend had been in a relationship, and he did not approve of the relationship.

¶77. The issuing judge was also asked if he had ever visited the residence where John lived with his girlfriend. The State objected on the grounds of relevance and argued, "I don't see how this relates to whether or not there was sufficient probable cause for the warrant and whether [the] judge used his neutral and detached function as the magistrate to sign a warrant." Judge Emfinger sustained the objection.

¶78. The issuing judge was then asked if he had ever met the woman at the residence where John lived with his girlfriend. The State again objected as to relevance, and Judge Emfinger held that the objection would be sustained unless defense counsel could explain to the court "what the relevance would be to this search warrant." Defense counsel explained that he was trying to show that the issuing judge was not a neutral and detached magistrate because of the relationship between John and his girlfriend, and his relationship with the woman.

¶79. Judge Emfinger then considered the underlying facts and circumstances to support the search warrant. He ruled that the facts and circumstances failed to identify John as being involved in the child pornography investigation. He also determined that the search warrant was signed in 2011, and the allegations about the issuing judge were from 2004 and 2005. Thus, Judge Emfinger ultimately concluded that "[the issuing judge's] relationship with [the woman] or [John's girlfriend], or even the knowledge of John . . . is [not] relevant where none of that is shown on this search warrant."

¶80. Donaldson's counsel then insisted that whether the issuing judge had been to John and

John's girlfriend's residence was relevant because it would show that the issuing judge knew John's last name was Donaldson. Judge Emfinger allowed counsel to continue with his questioning. The issuing judge was then asked if he had ever been to John and his girlfriend's residence and he answered, "Absolutely. And as soon as I saw that they were co-habitating, I quit going there. I was very uncomfortable with that." The issuing judge was then asked his purpose in going there; the State objected, and Judge Emfinger sustained the objection.

¶81. John testified that, approximately two weeks before the search warrant was issued, he had a telephone conversation with John's girlfriend. They discussed the compromising photographs of the issuing judge and the woman. John said that his girlfriend asked him if he still had the photographs, and he told her that he did. John testified that when he told his girlfriend that he had not destroyed the photographs like she thought he had, that she became angry and "pretty much hung up on [him]."

¶82. Additionally, John testified that during the execution of the search warrant, the Cyber Crime Unit seized the computers that contained the photographs of the issuing judge and the woman. John further testified that he lived with Michael when the search warrant was executed, but he was not at the house during the search. According to John, most of his computer equipment was taken during the search.

¶83. After Donaldson's counsel asked John about the relationship between the issuing judge and the woman, the State objected on the grounds of relevance. Judge Emfinger sustained the objection. Thereafter, Donaldson's counsel asked to proffer what John's

testimony would be and Judge Emfinger refused to allow the proffer.

¶84. During her testimony, John's girlfriend denied calling John approximately two weeks before November 3, 2011. She denied that she asked John to give her all of the photographs that he had taken of the issuing judge and the woman. John's girlfriend said that the conversation about the pictures happened "months and months prior to that." She also denied that she threatened John that his probation would be revoked if he didn't turn over the photographs. However, John's girlfriend admitted that she thought she had threatened John with probation-revocation because he blackmailed her over the photographs. When asked if the issuing judge and the woman ever visited her home, the State objected to the relevancy of the question. Donaldson's counsel explained that the question was for impeachment purposes, but Judge Emfinger sustained the objection. John's girlfriend did testify that although she introduced John to the issuing judge, she did not believe that she had mentioned John's last name to him. To her knowledge, John's girlfriend said that the issuing judge had never met Michael Donaldson. At the conclusion of her testimony, defense counsel asked for permission to proffer that if he had been able to "ask those questions that were sustained as to relevance," he would have been better able to show that the issuing judge was not detached and neutral. Judge Emfinger ruled that he would let defense counsel make an argument at the conclusion of the hearing, but he would not let defense counsel "proffer into the record questions [he] didn't ask."

¶85. Judge Emfinger denied the motion to dismiss the indictment or, in the alternative, to suppress evidence. He found that Donaldson failed to present any evidence "to show that

[the issuing judge] was anything less than a neutral and detached magistrate." Further, he ruled that "there was never any testimony or evidence presented that [the issuing judge] in any way knew that [John] was in any way connected to [Michael Donaldson] or that [John] had anything to do with [Michael Donaldson's] residence . . . at the time of the issuance of this search warrant." Judge Emfinger also concluded that Donaldson had failed to present evidence "that would indicate in any shape, form, or fashion that [the issuing judge] had any way to connect . . . the probable cause in this warrant to the person he knew as John and . . . any relationship, according to [John's] testimony, existed in 2004 and 2005. This warrant was issued in 2011." Judge Emfinger additionally stated, "there's been absolutely no proof before this [c]ourt that [the woman] had had any conversations with [the issuing judge] concerning those photographs or pictures." Thus, Judge Emfinger found that the search warrant "was properly issued."

¶86. In *Cole v. State*, 915 So. 2d 481, 483 (¶9) (Miss. Ct. App. 2005), this Court found no error where an appellant claimed that the search warrant was not issued by a detached and neutral magistrate. There, the judge who signed the search warrant acknowledged that Cole's current girlfriend was his ex-girlfriend, and the judge admitted that he had previously contacted his ex-girlfriend to warn her that the appellant was a "drug kingpin." *Id*. at (¶7). This Court ruled that "[g]iven these circumstances, it certainly would have been preferred that some other judge approve the search warrant." *Id*. This Court acknowledged that a suppression hearing on the issue of the search warrant was later held before a neutral and detached magistrate, who "found that a sufficient evidentiary foundation existed to have

29

justified issuance of the search warrant." *Id*. at (¶8). This Court also "reviewed the affidavit for a search warrant and the record of the suppression hearing" and determined "that there was put forth sufficient information which would justify the issuance of a search warrant." *Id*. at (¶9). Thus, in *Cole*, this Court determined that there would be no constitutional violation where ample probable cause exists. *See also United States v. Heffington*, 952 F.2d 275, 279-80 (9th Cir. 1991) ("[T]he trial court applied the harmless error analysis to appellant's neutral and detached magistrate claim because from all the facts before the court it was clear that any magistrate would have found probable cause for a warrant.")

¶87. "It is well-settled that an individual issuing a warrant must be a detached and neutral magistrate." *Mitchell v. State*, 931 So. 2d 639, 642 (¶7) (Miss. Ct. App. 2006) (first citing *Johnson v. United States*, 333 U.S. 10, 14 (1948); then citing *McCommon v. State*, 467 So. 2d 940, 942 (Miss. 1985)). "On review of a challenge to the issuance of a search warrant, this Court will affirm if there was a substantial basis for the conclusion that probable cause existed." *Batiste v. State*, 121 So. 3d 808, 859 (¶129) (Miss. 2013).

¶88. Here, we find no evidence to establish that the issuing judge knew that John was Michael Donaldson's brother or that John lived with Michael. The search warrant only mentioned the name of Michael Donaldson. Additionally, John's girlfriend testified that although she did talk to John about returning the pictures of the judge and the woman, the conversation occurred "months and months" prior to the issuance of the search warrant. Donaldson offered no evidence that John's girlfriend had ever talked to the issuing judge about the pictures.

¶89.    Based on our review of the record, we find that there was a sufficient evidentiary basis to justify the issuance of the search warrant.  Therefore, we find no merit to this issue.

> 9.    *The judge assigned to the case should have recused.*

¶90.    Next, Donaldson claims Judge Emfinger should have recused.  Since this case was originally assigned to him, Judge Emfinger presided on all pre-trial matters.  A month before the scheduled trial, Donaldson filed a motion to recuse Judge Emfinger.  The motion asked that the case be reassigned to Rankin County Senior Circuit Judge William Chapman.  Eight days before trial, Judge Chapman entered an order that reassigned the case as requested. Judge Chapman presided over the trial.

¶91.    Despite being granted the requested relief, Donaldson argues that, because of Judge Emfinger's substantial involvement in the case, Judge Emfinger's decisions should have been reviewed anew by Judge Chapman.  Hence, Donaldson says that he should have been given another opportunity to present evidence and have Judge Chapman rule on the motion to suppress.  Donaldson also attacks the order granting the State's motion in limine, which prohibited Donaldson from introducing evidence regarding

> any testimony, asking any questions of witnesses or making any remarks at any point during this trial, in the presence of the jury, concerning any facts or evidence regarding the alleged friendship and relationship between [the issuing judge, the woman] or [John's girlfriend]; any reference to alleged pictures of [the issuing judge, the woman] or [John's girlfriend]; or any facts or evidence concerning the relationship between John Donaldson and [the woman].

¶92.    Donaldson claims Judge Emfinger should have recused himself prior to ruling on these "critical motions" because his daughter was employed by in the Public Integrity Division of the Attorney General's office at the time of trial.  According to Donaldson, the

Cyber Crime Unit of the Public Integrity Division prosecuted the case.

¶93. Donaldson further claims that Judge Emfinger should have recused himself prior to ruling on his motions because Judge Emfinger worked in close proximity with the issuing judge. Donaldson argued:

> The Rankin County Courthouse is a relatively small place, and it is commonplace for judges and other court personnel in the same courthouse to meet with one another, formally and informally, for many reasons. It is likely that those judges socialize with one another and court personnel at court or bar events, or privately. Logically, people who see each other regularly over time develop professional respect, appreciation and friendships for one another.
>
> Consequently, a reasonably well-informed person might harbor a reasonable doubt about a judge's capacity for impartiality when it comes to judging the credibility of those with whom he has enjoyed such relationships. Where, as here, the case involves a fellow judge and court personnel as witnesses, and the judge is called upon to judge their credibility about possible misconduct, then a judge should recuse himself.

¶94. Donaldson cites Canon (3)(E) of the Mississippi Code of Judicial Conduct, which requires a judge to "disqualify [himself] in proceedings in which [his] impartiality might be questioned by a reasonable person knowing all the circumstances" including, but not limited to, where a "person within the third degree of relationship" of the judge is acting as a lawyer in the proceeding or is "known by the judge to have an interest that could be substantially affected by the outcome of the proceeding."

¶95. "[A] judge's impartiality is presumed, and the presumption must be overcome by the appellant in order for appellate courts to find manifest error." *West v. State*, 131 So. 3d 583, 586-87 (¶10) (Miss. Ct. App. 2013). "Mere speculation is insufficient to raise reasonable doubt as to the validity of the presumption that the trial judge was qualified and unbiased."

*Jackson v. State*, 962 So. 2d 649, 663 (¶31) (Miss. Ct. App. 2007).

¶96.    Canon 3 requires that we apply an objective standard of review to determine whether a judge should have disqualified himself from hearing a case. *West*, 131 So. 3d at 586-87 (¶10). "A judge is required to disqualify himself if a reasonable person, knowing all the circumstances, would harbor doubts about his impartiality." *Id*. "The decision to recuse or not to recuse is one left to the sound discretion of the trial judge, so long as he applies the correct legal standards and is consistent in the application." *Id*.

¶97.    On January 8, 2015, Donaldson filed the motion to recuse Judge Emfinger. He claimed this was after he discovered that Judge Emfinger's daughter was employed as a Special Assistant Attorney General in the Public Integrity Division.[7] Donaldson asked that Judge Emfinger "either recuse himself from further participation in this action, or re[]assign this action to . . . [Judge] Chapman." By order dated January 12, 2015, Judge Chapman reassigned the case to himself.

¶98.    During the trial, Donaldson asked Judge Chapman to revisit the order that granted the motion in limine and prevented Donaldson from calling the issuing judge as a witness at trial. Judge Chapman declined and ruled:

> I have reviewed and studied th[e] transcripts. And it seems to me that what was before Judge Emfinger was, as much of anything, a suppression hearing relative to the issuance of the warrant with the allegations that [the issuing judge] was not a neutral and detached magistrate. And Judge Emfinger considered all of that.

---

[7] Donaldson additionally asserted that Judge Emfinger's daughter also worked as a summer intern for the Rankin County District Attorney's office from May 2004 until August 2012.

. . . .

> I can say, based on what I have before me, I would have ruled exactly the way [Judge Emfinger] ruled. I think he was correct in that ruling in that it was reasonable for that warrant to be executed. And the evidence turned up during that search warrant doesn't give the [c]ourt any indication that anything improper had gone on.

¶99. The State argues that this issue was waived. Donaldson knew, or reasonably should have known, that Judge Emfinger and the issuing judge were colleagues when he filed his motion to dismiss or, in the alternative, suppress evidence. Rule 1.15 of the Uniform Rules of Circuit and County Court provides:

> A motion seeking recusal . . . shall, in the first instance, be filed with the judge who is the subject of the motion within 30 days following notification to the parties of the name of the judge assigned to the case; or, if it is based upon facts which could not reasonably have been known to the filing party within such time, it shall be filed within 30 days after the filing party could reasonably discover the facts underlying the grounds asserted.

The motion to recuse was filed two years after the motion to dismiss. We agree; Donaldson's motion for recusal of Judge Emfinger was not timely filed and was waived.

¶100. Notwithstanding the waiver, Donaldson "has not pointed to any specific rulings which indicate that [Judge Emfinger] was biased or unqualified" to rule on his motions. *Jackson v. State*, 1 So. 3d 921, 927 (¶18) (Miss. Ct. App. 2008). We find no merit to this issue.

> 10. *The judge who reassigned the case to himself should have also recused.*

¶101. Donaldson also claims that Judge Chapman should have recused. On April 25, 2016, Donaldson filed a motion to recuse Judge Chapman. This motion was filed more than one year after his post-trial motions but prior to a ruling on the motions. Donaldson claimed that "[b]ecause the allegations contained herein cast doubt on the integrity of persons who have

34

past and present associations with courthouse personnel, [Judge Chapman] should recuse [him]self from any further proceedings and request the [s]upreme [c]ourt to appoint a special judge[.]" Judge Chapman denied the motion by order dated July 22, 2016.

¶102. Rule 1.15 of the Uniform Circuit and County Court Rules clearly requires a motion to recuse be filed within thirty days. Here, Donaldson filed this motion for recusal well outside of the thirty-day requirement.

¶103. Donaldson does not appeal the denial of the motion for recusal. Instead, Donaldson claims that Judge Chapman should have "voluntarily recused himself from this case prior to trial and prior to hearing the post-trial motions." Since Judge Chapman, like Judge Emfinger, was a colleague of the issuing judge, the woman, and John's girlfriend, Donaldson claims that Judge Chapman should have voluntarily recused himself to avoid the appearance of impropriety. Since this argument was previously made regarding Judge Emfinger, there is no question that Donaldson could have made this assertion in a timely manner after Judge Chapman reassigned the case to himself.

¶104. We conclude that Donaldson's motion for recusal of Judge Chapman was not timely filed and was waived. Notwithstanding the waiver, we also find that Donaldson "has not pointed to any specific rulings which indicate that [Judge Chapman] was biased or unqualified" to rule on his motions. *Jackson*, 1 So. 3d at 927 (¶18). We find no merit to this issue.

> 11. *The court committed reversible error by improperly precluding Donaldson from presenting a defense.*

¶105. Donaldson next argues the circuit court improperly precluded him from presenting a

35

defense in various ways. "A criminal defendant is entitled to present his defense to the finder of fact, and it is fundamentally unfair to deny the jury the opportunity to consider the defendant's defense where there is testimony to support the theory." *Clark v. State*, 40 So. 3d 531, 542 (¶30) (Miss. 2010). However, "all evidence admitted in support of the defendant's theory of the case must comport with the Mississippi Rules of Evidence." *Id*. "The relevancy and admissibility of evidence are largely within the discretion of the trial court[.]" *Id.* at 543 (¶30). We separately address each claim.

### A.     *Testimony Regarding Conspiracy Theory*

¶106. Donaldson first claims the court erred in granting the State's motion in limine regarding his conspiracy theory. He contends the court "precluded him from presenting evidence regarding the relationship between [the issuing judge], [John's girlfriend], [the woman], and [John] Donaldson, and any reference to the pictures possessed by [John]." Donaldson asserts that "[w]ithout proof of his conspiracy theory, [he] was left without a defense and was unable to effectively cross-examine the witnesses and demonstrate their untruthfulness." He further asserts that "[s]uch evidence might have created a reasonable doubt about whether [he] knowingly and intentionally possessed the images."

¶107. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Evans v. State*, 25 So. 3d 1054, 1057 (¶6) (Miss. 2010). "[A] motion in limine should be granted only if: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." *Id*. "Before granting a motion

in limine, courts must be certain that such action will not unduly restrict opposing party's presentation of its case." *Whittley v. City of Meridian*, 530 So. 2d 1341, 1344 (Miss. 1988).

¶108. During the hearing on the motion in limine, the court asked Donaldson's counsel how the issuing judge's testimony was relevant to the charges. Defense counsel responded, "Motive. Motive . . . to do my client harm when he's done nothing." Defense counsel further stated that the issuing judge's testimony was relevant to prove that: (1) the issuing judge knew John, (2) the issuing judge had an inappropriate relationship with the woman, and (3) the motive for the child pornography investigation was to retrieve the incriminating pictures. Defense counsel advised that John would testify that "when [he] refused to give [John's girlfriend] those pictures, just two weeks before [Donaldson] was arrested, that there was a conspiracy then set up to get with the Cyber Crime Unit, the investigators there, and to obtain a search warrant to get those pictures under the guise of him having child pornography."

¶109. However, the State offered testimony that the child pornography investigation was initiated solely by the Cyber Crime Unit and that no one in the Unit had talked to any law enforcement officers or judges, or to the district attorney's office in Rankin County, about the investigation before the November 4, 2011 search warrant was obtained and executed.

¶110. The trial court granted the motion in limine and determined that such evidence had no relevance to Donaldson's investigation for possession of child pornography. We find no abuse of discretion in the trial court's decision to grant the State's motion in limine. Accordingly, we find no merit to this issue.

### B. Cross-examination Regarding Time Stamps

¶111. Donaldson next argues the trial court limited his cross-examination regarding the time stamps. Donaldson asserts he "attempted to show that the State had misinterpreted the times" and that "the files were actually accessed at approximately 11:00 a.m. local time when the State had sole custody of the hard drive rather than 6:00 a.m. when, according to the State's theory, [he] had sole access."

¶112. We review a trial court's limitations on cross-examination for abuse of discretion. *Anthony v. State*, 108 So. 3d 394, 397 (¶5) (Miss. 2013). "We will affirm the trial court's exercise of discretion unless the ruling resulted in prejudice to the accused." *Id*.

¶113. During Investigator Turnage's cross-examination, Donaldson attempted to show Investigator Turnage his laptop and XWave software to prove that Investigator Turnage was misinterpreting the time stamps. The State objected, and the trial court sustained the objection, informing Donaldson: "[t]hat would be you testifying, and you've already testified." Donaldson's counsel explained, "[n]o, your Honor, he wants to . . . show him an example." The court asked Investigator Turnage if he was confused by Donaldson's line of questioning, and Investigator Turnage responded that he was not. The court then stated: "[h]e doesn't need to be shown anything." Thereafter, Investigator Turnage testified that the time stamps referred to universal time and not local time.

¶114. Importantly, the record reflects that despite not being allowed to show Investigator Turnage an example from his laptop and XWave software, Donaldson was still able to cross-examine Investigator Turnage regarding the date that the IP address of Laptop 1 was assigned

38

to Donaldson.  We find no abuse of discretion or reversible error.

### C.    *Exclusion of Documents*

¶115.  Donaldson next argues that the trial court erroneously excluded documents from the National Institute of Standards and Technology Information Technology Laboratory and the U.S. Department of Justice's websites, along with approximately forty document files. Donaldson claims these documents would have cast doubt on Investigators Houston's and Turnage's testimonies that no two files have the same "hash value."

¶116.  On cross-examination, Investigator Houston was asked if he was "familiar with th[e] document released by the National Institute on Standards of Technology."  The State objected to the admission of this document based on authentication.  Donaldson argued that because there was a government seal on the document, the document was self-authenticating. However, the trial court sustained the objection and explained: "There's a difference between a self-authenticating document that has some sort of certification credentials.  This has none. It's paper printed off the internet."  Donaldson then asked Investigator Houston if he could identify the document, to which Investigator Houston responded that he could not.

¶117.  Despite the exclusion of the document, Donaldson was allowed to show Investigator Houston a demonstration that he had prepared about "hash values."  Donaldson cross-examined Investigator Houston about the demonstration:

Q.    Do those two different files have the same hash value?

. . . .

A.    Yeah. . . . Yes, those are the same hash values.

Q. From two different files?

A. Yes, sir. Those are two different files with different file extensions.

. . . .

Q. Is that the first time you've witnessed two files having the same – two different files having the same hash value?

A. Yes, sir.

¶118. Additionally, during Investigator Turnage's cross-examination, Donaldson attempted to introduce a document from the U.S. Department of Justice's website. The State objected on the grounds of "lack of foundation, authentication, hearsay, and relevance." The trial court sustained the objection, and explained that the document "does not have the indicia of trustworthiness in the sense of there's just no certification[.]" However, Donaldson questioned Investigator Turnage regarding the contents of the document:

Q: And did the hashes always match in this case related to [Laptop 1]?

A: Yes.

Q: They did? Have you read the article from the Department of Justice where the last six sectors or eight sectors of a disc are not imaged using FTK?

A: I've heard . . . that argument brought up before, but it's not anything that IACIS had told us or put out that it shouldn't be used. And the FBI cart lab still uses the FTK software imager, the same FTK software that I use to do the examination nationwide. So if there's a problem with FTK, when I see hash values not match, then I'm not going to use FTK anymore, or when the FBI says that they're through with it, because there's a problem with it, then I'm going to be through with it.

¶119. Thus, the record indicates that, despite the exclusion of the documents from the National Institute of Standards and Technology Information Technology Laboratory and the

U.S. Department of Justice's websites, Donaldson was still able to cross-examine the State's expert witnesses about the contents of the documents and present his theory of defense. Indeed, the record reflects that Donaldson questioned the investigators regarding the documents and was not deprived of a meaningful opportunity to present his defense.

¶120. Donaldson also claims the circuit court erroneously excluded "an additional 40 files demonstrating that the images were different although the hash values were the same." However, Mississippi Rule of Evidence 403 allows the circuit court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . needlessly presenting cumulative evidence." Because the documents were cumulative to the files Donaldson had already presented, we do not find the trial court abused its discretion in excluding the documents. Thus, we find no reversible error or merit to this issue.

12. *The court erred in not severing the counts*.

¶121. Donaldson further argues that the trial court erred in denying his motion to sever the two counts of the indictment. Donaldson asserts the two indicted offenses were not part of the same scheme or plan and were not interwoven.

¶122. We employ an abuse-of-discretion standard when reviewing a trial court's denial of a motion to sever a multi-count indictment. *Singleton v. State*, 151 So. 3d 1046, 1049-50 (¶14) (Miss. Ct. App. 2014). When the defendant files a motion to sever the counts in an indictment, "the State bears the burden of making out a prima facie case showing the offenses charged are within the language of the statute." *Id*. at (¶15). If the State meets this burden, "the defendant may thereafter rebut the State's case by showing the offenses were

separate and distinct acts or transactions." *Id*. "[T]he trial court must conduct a hearing to determine whether or not to sever the counts." *Id*. at (¶16). "[T]his Court gives deference to the trial court's findings, unless an abuse of discretion occurred." *Id*.

¶123. Pursuant to Mississippi Code Annotated section 99-7-2(1) (Rev. 2015):

> Two (2) or more offenses which are triable in the same court may be charged in the same indictment with a separate count for each offense if: (a) the offenses are based on the same act or transaction; or (b) the offenses are based on two (2) or more acts or transactions connected together or constituting parts of a common scheme or plan.

In *Corley v. State*, 584 So. 2d 769, 772 (Miss. 1991), the supreme court ruled there were three issues to consider: (1) whether the time period between the occurrences is insignificant; (2) whether the evidence proving each count would be admissible to prove each of the other counts; (3) and whether the crimes are interwoven. The court reasoned that:

> We recognize that if the trial court finds that the offenses stem from separate and distinct acts or transactions, in some cases the State still may be allowed to introduce evidence of the other offense(s) under Rule 404(b)[.] Whether the evidence would be admissible under this rule has no bearing on whether the trial court should allow a multi-count indictment.

*Corley*, 584 So. 2d at 772 n.1.

¶124. At the motion hearing, Donaldson claimed that the indicted offenses were two separate crimes because the offenses were not committed on the same day. He maintained that the crimes were not interwoven, and argued that "[t]he only similarity of the charged crimes [is] that they are both sex crimes."

¶125. However, the State argued that the time period between the charges was insignificant and explained that the possession of child pornography charge was from November 4, 2011,

and the video was created on October 28, 2011. The State further argued that the evidence to prove each count would be admissible to prove the other count. The State maintained that although the video is a recording where an expectation of privacy existed, it also constituted child pornography. The State explained that it would attempt to introduce the video of MB to show ownership and knowledge for Donaldson's possession of child pornography charge. Since the computer containing child pornography and the video of MB was found in Donaldson's bathroom, the same location where he filmed MB, the State argued that the crimes were interwoven.

¶126. The trial court denied the motion and ruled:

> I find that the amount of time, whether it was October or close or further away from that, I don't think that is as significant as the fact that the proof would be admissible on both counts and that even in separate trials[,] . . . the evidence would be admissible as to [Donaldson] in each trial, both as evidence, as the State has indicated of each of the counts, but further to show the items coming off the same computer with the video showing [Donaldson] in the video would tend to show the ownership, knowledge and identity of the person responsible for possessing the other items that were contained on the computer that were similar in nature. So I believe that under the law this is a proper multi-count indictment[.]

¶127. We find no abuse of discretion. The trial court properly considered the *Corley* factors before denying Donaldson's motion to sever. We find no merit to this issue.

>  13.     *Prosecutorial misconduct occurred during closing arguments.*

¶128. Donaldson last argues that he was deprived of a fair trial because of the prosecutor's improper and inflammatory comments during closing arguments. When we review allegations of prosecutorial misconduct during closing arguments, we must determine "whether the natural and probable effect of the improper argument is to create unjust

43

prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Fortenberry v. State*, 191 So. 3d 1245, 1251 (¶18) (Miss. Ct. App. 2015). "[A]ny allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case[.]" *Id*. We recognize that "[c]ounsel is allowed considerable latitude in the argument of cases." *Id*. The prosecutor "is not limited to the facts introduced into evidence," and "he may argue the deductions and conclusions that may reasonably be drawn therefrom." *Id*.

¶129. Donaldson claims the prosecutor improperly commented on what Donaldson allegedly said when the search warrant was executed. The prosecutor said:

> And I submit to you the first word out of his mouth [when questioned at his house at the time of the search], or one of them when he was asking questions was, how did ya'll open my encrypted files? How did y'all get into those encrypted files?

After this comment, defense counsel approached the bench and argued, "[t]hat's not in the record." The court then instructed the jury, "Ladies and gentlemen, the jury's recollection of the evidence will control." Donaldson did not request any additional curative instruction. In addition, prior to closing arguments, the court instructed the jury as follows: "The [closing] arguments, statements and remarks of counsel . . . are not evidence . . . . [The attorneys], as you, will be recalling the evidence that has been presented. . . . [I]f their recollection of the evidence differs from what your recollection is, you must follow your own recollection. If any argument, statement or remark has no basis in the evidence, then you should disregard the argument, statement, or remark."

¶130. "The jury is presumed to have followed the directions of the trial judge." *Catchings*

*v. State*, 39 So. 3d 943, 949 (¶22) (Miss. Ct. App. 2009). "[W]hen a jury is properly instructed that statements made by counsel are not evidence, reversal is not required." *Randall v. State*, 806 So. 2d 185, 213 (¶72) (Miss. 2001) (quoting *Burns v. State*, 729 So. 2d 203, 229 (Miss. 1998)). The jury instructions, along with the court's reminder that "the jury's recollection of the evidence will control," were sufficient to cure any error in the prosecutor's remark.

¶131. Although Donaldson takes issue with additional statements made by the prosecutor, he failed to object to those statements. Indeed, the record reveals no further objections during the State's closing argument. While "the failure to object contemporaneously generally waives a claim of prosecutorial misconduct during closing argument, we will review such a claim if the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion." *O'Connor v. State*, 120 So. 3d 390, 399 (¶26) (Miss. 2013). We do not find the prosecutor's additional statements rise to this level.

¶132. Donaldson claims there was no evidentiary support for this statement:

> Y'all heard testimony not just from the defendant, y'all heard from Investigator Turnage, . . . . Well, you know, I couldn't image some of those devices, because they're encrypted and you didn't give me the encryption key. Maybe that's why we didn't find all the undercover videos, because they're sitting right there.

However, the record indicates Investigator Turnage testified that there were encrypted files on Donaldson's computers that could not be accessed or imaged. Thus, Donaldson's claim fails as there was evidence to support the prosecutor's comment.

¶133. Donaldson next claims that the prosecutor "expressed his opinions of Donaldson's

guilt and placed the prestige of his office behind that opinion" when it was said, "If there's any doubt as to what he knew was on his computer, I guarantee you, I assure you he did." "Except to the extent the prosecutor bases any opinion on the evidence in the case, he may not express his personal opinion on the merits of the case or the credibility of witnesses." *Stokes v. State*, 141 So. 3d 421, 427 (¶24) (Miss. Ct. App. 2013). Yet, this comment was based on the evidence, as the testimony showed that several child pornography files were accessed during a time when Donaldson was the only person known to be inside the house.

¶134. Donaldson further claims the prosecutor "misstated the evidence about whether it had proved that the video of MB had been recorded within the statute of limitations." Specifically, the prosecutor stated:

> [Y]ou heard on October 28th, 2011, from Investigator Joey Turnage, our forensic computer examiner. He said that's when it's made; that's the creation date. You know, they try to do all the smoke and mirrors about, oh, well, it's made before here, or it couldn't have been made then. I submit to y'all digital evidence doesn't lie. It is what it is. [The video of MB] was made on October 28th, 2011.

Donaldson claims the creation date is not the date on which a video was recorded; rather, it is the date that the video is placed on the computer. However, Investigator Turnage testified at trial that based on his forensic examination of Laptop 1, the video of MB was filmed on October 28, 2011.

¶135. Donaldson last claims the prosecutor "improperly vouched for the integrity of the prosecution" when he said, "I'll submit to you we don't bring charges against people that have even questionable material. These are young kids, actual children." However, Donaldson fails to include the prosecutor's full statement. The prosecutor said:

[I]t's for y'all's determination to decide if these images and videos are child pornography and/or children. The judge told you to use your common sense. Y'all go back there and look at those pictures, and tell me if y'all don't think those are children. There's not even a doubt. No, these aren't teenagers. Okay? . . . I'll submit to you we don't bring charges against people that have even questionable material. These are young kids, actual children.

Considering the comment in context and the circumstances of the case, we do not find the prosecutor's statement was prejudicial. There was evidence presented that the images contained on Donaldson's computer were in fact images of children.

¶136. "The purpose of a closing argument is to fairly sum up the evidence." *Galloway*, 122 So. 3d at 643 (¶72). "The prosecutor may comment upon any facts introduced into evidence, and he may draw whatever deductions and inferences that seem proper to him from the facts." *Id*. We find no merit to Donaldson's claims of prosecutorial misconduct.

¶137. **AFFIRMED.**

**CARLTON, FAIR, WILSON, GREENLEE AND TINDELL, JJ., CONCUR. IRVING, P.J., BARNES AND WESTBROOKS, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. LEE, C.J., NOT PARTICIPATING.**