# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00078-COA

**STANLEY CHARLES FOLLETT A/K/A**                  **APPELLANT**
**STANLEY FOLLETT**

**v.**

**STATE OF MISSISSIPPI**                                       **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/2022 |
| TRIAL JUDGE: | HON. LISA P. DODSON |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALEXANDRA LEBRON |
| DISTRICT ATTORNEY: | WILLIAM CROSBY PARKER |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 02/27/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., LAWRENCE AND McCARTY, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Stanley Charles Follett was tried before a jury in the Harrison County Circuit Court and convicted of two counts of child exploitation pursuant to Mississippi Code Annotated section 97-5-33(5) (Rev. 2020). The trial court sentenced Follett to a term of forty years for each count, with ten years suspended and thirty years to serve, in the custody of the Mississippi Department of Corrections, followed by five years of reporting post-release supervision and any remaining years of the terms to be served as non-reporting post-release supervision. The trial court also ordered Follett to register as a sex offender, pay court costs,

and pay assessments upon his release. Follett appeals his convictions and sentences, asserting that the State presented insufficient evidence to sustain his convictions for child exploitation or that his convictions are against the overwhelming weight of the evidence. For the reasons addressed below, we affirm Follett's convictions and sentences.

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

¶2.     A Harrison County grand jury indicted Follett for two counts of child exploitation pursuant to section 97-5-33(5). Count 1 of the indictment alleged that "[o]n or about January 24, 2020, . . . Follett[] did . . . knowingly possess or knowingly access with intent to view . . . a visual depiction of an actual child engaging in sexually explicit conduct on a . . . hard drive[,] . . . contained within an HP laptop . . . ."[1]  Count 2 alleged that "[o]n or about November 18, 2019," Follett "knowingly possess[ed] or . . . access[ed] with intent to view" such child exploitation materials that were found "on a Google account with the account name of stanleyfollett@gmail.com . . . ."  Follett pleaded not guilty and proceeded to trial.

¶3.     At trial, Charles Rubisoff, a senior investigator for the Cyber Crime Division (CCD) of the Mississippi Attorney General's Office, testified as the State's first witness. The State began its investigation into this case when the National Center for Missing and Exploited Children (NCMEC) contacted it about a "cybertip" it had received from Google. The case was assigned to the CCD, and Rubisoff was the lead investigator on the case.

¶4.     Investigator Rubisoff explained that NCMEC maintains a tip line for internet service

---

[1] The indictment specifically described the hard drive and the laptop. Because the hard drive and laptop were referred to interchangeably throughout the trial, all references to the laptop in this opinion include the hard drive.

2

providers to report suspected child exploitation material on its infrastructure. NCMEC then sends those reports, known as cybertips, to law enforcement for investigation. Google generated a cybertip after identifying images of child exploitation on one of its users' accounts. The account, stanleyfollett@gmail.com, was later identified as belonging to Stanley Follett.

¶5. Investigator Rubisoff testified that the first cybertip listed an "incident date" of November 18, 2019, and included: (1) twelve images of suspected child exploitation; (2) the Google account name, stanleyfollett@gmail.com; (3) subscriber's name, Stanley Follett; (4) recovery email address, stanleyfollett@aol.com; and (5) Follett's phone number. The Internet Protocol (IP) address used to access the account was roughly geolocated to Harrison County, Mississippi. After the first cybertip, there were several subsequent cybertips regarding the stanleyfollett@gmail.com account that were "similar in nature." Investigator Rubisoff testified that "[t]he primary difference [between the cybertips] was related to the number of files that were being reported." The last login information associated with the Follett Google account was on November 10, 2019.

¶6. Based on the information provided in the cybertips, Investigator Rubisoff served a subpoena duces tecum on AT&T requesting information related to the IP addresses in the cybertips, but AT&T did not respond.

¶7. Investigator Rubisoff also served a search warrant on Google for the contents of the stanleyfollett@gmail.com account. Google provided the subscriber information and a certified copy of the files stored on the account. This included the (1) subscriber's name,

3

Stanley Follett; (2) email address, stanleyfollett@gmail.com; (3) recovery email address, stanleyfollett@aol.com; and (4) associated phone number. Google's information showed that the account had been disabled on November 10, 2019. Based on the information provided by Google, Investigator Rubisoff identified Stanley Follett as the user of the stanleyfollett@gmail.com account.

¶8. Investigator Rubisoff testified there were about forty child exploitation photos in Google's production which included images said to be confirmed by NCMEC to be photos of actual children. The contraband files "arrived inside the Google account . . . around spring, early summer of 2019." There were also pictures of Follett stored on the account. Investigator Rubisoff compared the pictures with Follett's driver's license photo and found that they were consistent.

¶9. Additionally, the Google production included "documents and correspondence involving Stanley Follett." Investigator Rubisoff testified that he found a direct deposit form for Follett, which listed his name; the address 782 Whitney Drive Biloxi, Mississippi; and a nine-digit number consistent with a social security number. He also found Follett's "EPA Section 608" testing results. The testing results also listed the 782 Whitney Drive address and a nine-digit "candidate number" identical to the number from the direct deposit form.

¶10. With the information from the cybertips and Google's production, Investigator Rubisoff obtained a search warrant for the Whitney Drive address in Biloxi where Follett was living with his parents and adult daughter. The search warrant was executed by Investigator Rubisoff and other law enforcement officers on January 24, 2020. Follett answered the door.

4

Also present in the home were Follett's mother, father, and daughter.

¶11.   David Allen, a digital forensic examiner also with the CCD, was part of the team executing the search warrant on January 24, 2020.  He testified that during the search of the home, he found a laptop in Follett's bedroom that was also used as a sewing room.  There was also a thumb drive and an external hard drive in a drawer underneath the laptop.  Investigator Allen performed an "on-site triage"[2] of the laptop and confirmed the presence of "hundreds" of images of child pornography on the device.  When he entered Follett's bedroom, the laptop was up, plugged into a television, and showing a television show, so he did not need to enter a password to examine it.  Investigator Allen testified that he also ran an on-site triage on a cell phone found in the garage.  Investigators seized the laptop and the cell phone.  The items were taken to the Attorney General's Office and digitally examined.[3]

¶12.   Follett willingly talked to Investigator Rubisoff and answered his questions.  Follett gave officers his cell phone number and the two email addresses, stanleyfollett@aol.com and stanleyfollett@gmail.com, as well as applicable passwords that he could recall.  Investigator Rubisoff wore a body camera during the warrant execution and a redacted portion of Follett's interaction with Rubisoff from the body-cam recording was admitted into evidence at trial.

---

[2] Investigator Allen explained that "to triage is to use special software to look at [an electronic device] in place to determine if it's of evidentiary value, if it needs to be taken for a full forensic examination."

[3] Investigator Allen said that he thought there were some other laptops in the house, but he did not run triage on any other devices that day.  However, Investigator Rubisoff, who led the investigation, confirmed that "[a]n on-scene triage was conducted on [the] devices [of the other members of the household]," and no child pornography was found on any of their devices.

Follett was also interrogated onsite by Eric Rather, another investigator with the CCD who assisted Investigator Rubisoff at the scene. An audio recording of that interview condensed for trial was admitted into evidence and played for the jury.

¶13. Follett was asked about the presence of child exploitation material associated with his Google account. He denied knowing anything about the files, and several times he denied having ever looked at child pornography.

¶14. Follett informed investigators that a prior cell phone of his (a Samsung Galaxy X10) had been lost or stolen around Thanksgiving 2019, or before, and that he had been unable to access the stanleyfollett@gmail.com account since around Thanksgiving 2019 when his phone was allegedly stolen. There were text messages on the cell phone found in the garage dated November 10, 2019, in which the sender appeared to be attempting to sell the phone back to Follett. Investigator Rubisoff confirmed that the text messages were from someone suggesting to Follett that if he gave the sender $250, the sender would return the phone. Follett's text reply was that he had already paid for a replacement phone.

¶15. Regarding Follett's inability to access his Google account, Investigator Rubisoff testified that Follett "speculated that whoever had taken possession of the phone had put in the wrong password too many times," locking him out. Follett said that any child exploitation materials on his account appeared after his phone was stolen.[4] In the recorded interview, Follett said that he never recovered the lost or stolen phone. Follett said that the

---

[4] During his interrogation, Follett said that he had moved out of his parents' house for about three months and had just returned "a couple of months" before the search was conducted. During this time, Follett indicated that he was basically "homeless" and that it was during this period that his phone was stolen.

cell phone found in the garage was a replacement phone that he had gotten from his daughter. Both phones were Samsungs.

¶16.    Follett admitted that the laptop found in his bedroom belonged to him and gave a statement that he was the only person who used the laptop.[5]  He said the password to his laptop was his last name and the last four digits of his social security number but that the laptop was left on all the time in his room.

¶17.    Investigator Rubisoff testified that after the laptop was collected at the scene, it was entered into evidence at the Mississippi Attorney General's Office.  He created a duplicate from the data contained on the hard drive; then he used a piece of digital investigative software to analyze the duplicated data by seeking out images and videos from the original dataset.  He reviewed this information and identified approximately 360 files that "depicted prepubescent children involved in lascivious display of genitalia or involved with sexual activity with an adult."  Some files were the same as those stored on Follett's Google account.

¶18.    Ashley Boldig was tendered and accepted without objection as an expert in the field of digital forensics.  She performed a digital forensic analysis on Follett's laptop and the cell phone found in the garage.

¶19.    With respect to the laptop, Investigator Boldig testified that it was password-

---

[5] Investigator Rubisoff testified that when Follett's father was questioned on the scene, he said that he [Follett's father] had previously been exposed to child pornography while in the military stationed in the Philippines.  As noted, Investigator Rubisoff confirmed that no child pornography was found in an on-site triage of the other household members' devices.

7

protected. She found child exploitation materials stored in four locations on the laptop: the recycling bin, the thumb cache database, the RealPlayer program directory, and in saved files under the user profile. She explained that a recycling bin contains and temporarily saves files that a user has deleted. The user still has access to the files. The recycling bin is significant because files in it could not have been placed there without user interaction. Regarding the thumb cache, Investigator Boldig explained that it is a compilation of thumbnail images or icons of the files stored on a computer. For each thumbnail present, a standard version of the file or image had been on the device at some point.

¶20. The RealPlayer application is a media application for viewing photos and videos. Investigator Boldig explained that each time a file is opened in RealPlayer, it takes a "snapshot" and saves it to the application data folder. As she explained, "[t]he user doesn't necessarily know that it's there or that it's doing that, but it is created when something is opened with that program saved in the program file data." So all images stored within the RealPlayer application data had been opened on that device at one point in time. Investigator Boldig testified that she found about 275 images of child exploitation on the RealPlayer application data on Follett's laptop. She identified a few children in the images from NCMEC's known series of child pornography. The date range for images opened in the RealPlayer application was between November 2018 and January 2019.

¶21. In examining the laptop's hard drive, Investigator Boldig also found "other images" and evidence "consistent with . . . showing Mr. Follett was a user of [the laptop]." She found a "Skype social media account . . . named Stanley Follett," and she found that the laptop had

8

been used to access Follett's Facebook profile on February 6, 2019; March 4, 2019; December 7, 2019; and December 31, 2019. Investigator Boldig found a Netflix account belonging to Follett's daughter, Stephanie, and noted in the course of her testimony that people who use Netflix commonly share passwords.

¶22.   Investigator Boldig also testified about what she found with respect to Google searches on the laptop. In particular, she found "multiple searches conducted on Google.com for boys wearing panties, cross-dressing boy's porn, cross-dressing boys, [and] dad comes inside son's ass." She testified that "[a] few of those search terms are commonly used when searching for and labeling child exploitation material." The date range for these searches was between February and November 2019. Investigator Boldig also found a bookmark saved in the browser for imagesource.ru. She explained that this was a Russian-based photo-sharing website commonly used to exchange child exploitation material. Investigator Boldig testified that "the user of [Follett's] laptop may have last visited" the site on May 28, 2018, and March 16, 2019.

¶23.   Regarding her digital forensic analysis on the cell phone found in the garage, Investigator Boldig testified that she viewed the phone's internet search history and found that Follett's Google account had been used to search for "Lolita porn" and "Lolita incest porn." She explained, "Lolita is a common term when searching for and labeling child exploitation material which means little girl." There were also searches for "teen lady boy" and "boys wearing lingerie."

¶24.   After presenting its case-in-chief, the State rested. Follett unsuccessfully moved for

9

a directed verdict. The defense rested without Follett testifying or calling any witnesses.

¶25.    The jury unanimously found Follett guilty of both charges, and the trial court sentenced Follett as set forth above.  Follett moved for judgment notwithstanding the verdict or, in the alternative, a new trial.  The trial court recognized Follett's post-trial motion was deemed denied by operation of law.  *See* MRCrP  25.3.  The trial court also found that the motion was without merit and, thus, denied it for this additional reason.

¶26.    Follett appeals.

## DISCUSSION[6]

¶27.    Follett challenges both the sufficiency and the weight of the evidence against him. We discuss each challenge in turn.

### I.    Sufficiency of the Evidence

¶28.    In reviewing a challenge to "the sufficiency of evidence supporting a guilty verdict, we view the evidence in the light most favorable to the State and decide if rational jurors could have found the State proved each element of the crime."  *Collins v. State*, 304 So. 3d 685, 691 (¶19) (Miss. Ct. App. 2020) (quoting *Lenoir v. State*, 222 So. 3d 273, 279 (¶25) (Miss. 2017)).  In this regard, "[t]he issue is not 'whether we think the State proved the elements.  Rather, we must decide whether a reasonable juror could rationally say that the State did.'"  *Id.* (quoting *Poole v. State*, 46 So. 3d 290, 293-94 (¶20) (Miss. 2010)).

¶29.    Follett was convicted of two counts of child exploitation pursuant to section 97-5-33(5), which provides that "[n]o person shall, by any means including computer, knowingly

---

[6] The applicable standard of review for each issue Follett raises is discussed in context.

10

possess or knowingly access with intent to view any photograph, drawing, sketch, film, video tape or other visual depiction of an actual child engaging in sexually explicit conduct." Miss. Code Ann. § 97-5-33(5). Thus, to convict Follett of child exploitation, the State was required to prove that Follett knowingly possessed or accessed with an intent to view "any . . . visual depiction of an actual child engaging in sexually explicit conduct" on his laptop (Count 1) and Google account (Count 2). *Donaldson v. State*, 262 So. 3d 1135, 1145 (¶17) (Miss. Ct. App. 2018) (quoting Miss. Code Ann. § 97-5-33(5)).

¶30.    Follett does not contest whether the images found on his laptop and Google account depicted "actual child[ren] engaging in sexually explicit conduct." Miss. Code Ann. § 97-5-33(5). Follett, however, asserts that the evidence is insufficient to convict him because the State did not prove that he "knowingly possess[ed] or knowingly access[ed] [the images] with intent to view [them]" on his laptop and on his Google account. We find that Follett's contention on this point is without merit.

¶31.    "In child pornography cases, possession may be either actual or constructive." *Donaldson*, 262 So. 3d at 1145 (¶17) (quoting *United States v. Terrell*, 700 F.3d 755, 765 (5th Cir. 2012)).

¶32.    "An item is within one's constructive possession when it is subject to his dominion or control." *Lowe v. State*, 269 So. 3d 244, 252 (¶18) (Miss. Ct. App. 2018). In this case, Follett's bedroom was also used as a sewing room; his mother, father, and daughter also lived in the home; and the laptop at issue, although password-protected, was left running in his room. Thus, we recognize that "where contraband is found upon premises not in the

11

exclusive control and possession of the accused, additional incriminating facts must connect the accused with the contraband . . . . [There must be] some competent evidence connecting [the accused] with the contraband." *Powell v. State*, 355 So. 2d 1378, 1379 (Miss. 1978).

¶33. Follett asserts that the State failed to present the requisite "competent evidence" connecting him to the images on the laptop or his Google account and thus his convictions should be reversed and remanded based on the insufficiency of the evidence. Follett relies on *Boyd v. State*, 204 So. 2d 165 (Miss. 1967), *Fultz v. State*, 573 So. 2d 689 (Miss. 1990), and *Smoots v. State*, 310 So. 3d 1184 (Miss. Ct. App. 2020), to support his assertions. But we find that these cases are wholly distinguishable because the appellate court in each case found *no* evidence in the record connecting the accused to the charged contraband.[7] That is

---

[7] In *Boyd*, for example, the defendant was convicted for possessing two bottles of methamphetamine pills without a prescription. *Boyd*, 204 So. 2d at 167-68. Two pill bottles containing the drugs were found in Boyd's truck, parked at his workplace. *Id.* at 168. Boyd's wife was believed to have taken the pill bottles from her workplace; officers on surveillance then saw her talking to a man in the parking lot of Boyd's workplace later that day. *Id.* The supreme court reversed Boyd's conviction, finding that although Boyd's wife was observed at his workplace parking lot talking to another man, "[t]here [was] nothing in the record to connect [Boyd's wife] and [the] unidentified man with [Boyd's] truck or to even show that the truck was on the lot at the time Mrs. Boyd was there." *Id.* at 173.

Similarly, in *Fultz*, the defendant was convicted of possessing marijuana with intent to distribute. *Fultz*, 573 So. 2d at 689. Fultz was stopped while driving his sister's car; over seven ounces of marijuana was found in a duffel bag in the trunk. *Id.* at 689-90. The supreme court reversed Fultz's conviction, holding that "[i]n light of . . . the absence of any evidence connecting the defendant with the trunk or any of its contents, we have no choice but to reverse this conviction and discharge the defendant." *Id.* at 691.

In *Smoots*, the defendant was convicted on two counts: possessing crack cocaine with the intent to distribute and tampering with evidence. *Smoots*, 310 So. 3d at 1185 (¶1). The police had obtained a warrant to search a pool hall based on a tip that someone was selling crack cocaine there. *Id.* at 1186 (¶3). At the pool hall, the officers found three men (Smoots, Demario, and Hodges) at a table; a toilet was running in the back. *Id.* at (¶4). After opening the sewer line, the officers found several rocks of crack cocaine. *Id.* Smoots and Demario were jointly indicted on both counts, but the State nolle prosequied the charges

12

not the case here. For the reasons addressed below, we find that the State in this case presented sufficient evidence with respect to both counts to allow a rational juror to find beyond a reasonable doubt that Follett knowingly possessed or knowingly accessed child pornography on his laptop (Count 1) and Google account (Count 2).

### A. Child Exploitation Materials on Follett's Laptop (Count 1)

¶34. To begin, based on the evidence detailed above and our review of the record, we find that there is ample evidence that Follett's laptop contained hundreds of images of children engaged in sexually explicit conduct and that these were images of "actual children" confirmed by NCMEC's "child victim identification program." The State presented the uncontradicted testimonies of Investigators Rubisoff and Boldig about finding hundreds of images depicting children engaged in sexually explicit conduct on the laptop found in Follett's bedroom. Investigator Boldig also testified that Google searches were performed on the laptop for "boys wearing panties," and the laptop was used to access a Russian-based photo-sharing website commonly used to exchange child exploitative material.

¶35. We further find that the State presented sufficient evidence showing Follett's

---

against Demario. *Id.* at (¶6). Only Smoots was subsequently convicted. *Id.* at 1188 (¶14).

The Court reversed Smoots's convictions, first observing that the State was "required to provide some independent proof that Smoots did, in fact, possess and flush the cocaine recovered from the sewer cleanout." *Id.* at 1188 (¶14). Because there was "no evidence that Smoots, *as opposed to Demario or Hodges*, possessed and flushed the cocaine found outside the pool hall," the Court found that "the evidence was insufficient to convict Smoots," and his convictions were reversed and rendered. *Id.* at 1190 (¶21) (emphasis added).

In contrast to these cases, we find that the State presented "competent evidence" connecting Follett to the child pornography on his laptop and his Google account. As detailed above, we therefore find that his insufficiency-of-evidence challenge is without merit.

13

"dominion and control" over the laptop and connecting Follett to the child pornography found on his laptop. In particular, the following evidence was presented at trial: Follett admitted he owned the laptop; the laptop was found in his bedroom; Follett told investigators that no one else used the laptop; the laptop was named "Stanley-laptop"; the laptop was password protected; and the password was Follett's last name and the last four digits of his social security number. Other "competent evidence connecting [Follett] with the [laptop containing the child pornography]," *Powell*, 355 So. 2d at 1379, includes the exhibits and testimony that photos of Follett were on the laptop, the laptop was used to access Follett's Facebook profile, and the name of the Skype account on the laptop was Stanley Follett.

¶36. Follett makes several arguments concerning potential access to the laptop by the other household members, but these assertions go to Follett's weight-of-the-evidence argument. We address them below.

¶37. As for Follett's insufficiency-of-the-evidence argument, viewing the evidence in the light most favorable to the prosecution, we find that there is sufficient evidence for a rational juror to find beyond a reasonable doubt that Follett knowingly possessed or knowingly accessed child pornography on his laptop. As such, we find that Follett's insufficiency-of-the-evidence argument with respect to Count 1 fails.

### B. Child Exploitation Materials on Follett's Google Account (Count 2)

¶38. We also find that there was sufficient evidence that Follett knowingly possessed, or knowingly accessed with intent to view, child exploitation material on his Google account. Investigator Rubisoff testified that he found approximately forty images of children engaged

14

in sexually explicit conduct on the stanleyfollett@gmail.com account. He further confirmed that some of the images were of known actual children that had been identified in prior law enforcement investigations. Investigator Boldig, based on her experience as an investigator on child exploitation cases and her digital forensics expertise, testified that Follett's Google account had been used to search for "terms that are commonly used when searching for and labeling child exploitation material." The Google account was used for such searches on both Follett's laptop and his cell phone.

¶39. Additionally, the evidence in the record shows that the Google account belonged to Follett and that he maintained dominion and control over the account until it was disabled on November 10, 2019. In addition to the evidence described above, the jury also heard evidence specific to the contents and information relating to the stanleyfollett@gmail.com account, including the following: the subscriber information that Google furnished showed the account subscriber's name was Stanley Follett; the recovery email connected with the account was stanleyfollett@aol.com; and Follett's phone number and address were associated with the account. Further, photos of Follett, Follet's direct deposit form, and Follett's "EPA Section 608" testing results were stored on the Google account. When Investigator Rubisoff asked for his contact information, Follett gave him two email addresses, one being the email address for the Google account, stanleyfollett@gmail.com, and the other being the recovery email address listed for that account (stanleyfollett@aol.com). Follett admitted that both were his email accounts. Some of the same child exploitation materials found on Follett's Google account were also separately stored on his laptop.

¶40. Follett asserts that his cell phone was stolen. He told the officers during his interviews that any child pornography on his Google account appeared after his phone was stolen. These assertions, however, relate to Follett's weight-of-the-evidence argument, and we address them below.

¶41. Follett also makes a separate insufficiency-of-the-evidence argument with respect to Count 2, pointing out that the date of the offense relating to his Google account as charged in his indictment was "[o]n or about November 18, 2019." He argues that he "could not have accessed child porn through his Google account on November 18 because the account had been deactivated on November 10[, 2019]," and thus "no reasonable person could have found beyond a reasonable doubt that [he] was guilty under Count 2." We do not find that this hyper-technical argument is supported by Mississippi law.

¶42. To begin, an allegation of the date of the offense is not an essential element of the child exploitation offenses charged in the indictment. *See* Miss. Code Ann. § 97-5-33(5); *Donaldson*, 262 So. 3d at 1145 (¶17). Rather, the dates proven at trial may "within reasonable limits" vary from the date alleged in the indictment so long as "the variance in dates . . . [does] not unfairly prejudice the defendant." *McBride v. State,* 61 So. 3d 138, 150 (¶48) (Miss. 2011). "Within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient." *Ross v. State*, 288 So. 3d 317, 322 (¶48) (Miss. 2020). Both these elements are met here. Investigator Rubisoff testified that child exploitation material was added to Follett's Google account in the spring or summer of 2019. This was before the return of the indictment on November 9, 2020, and

16

there is no statute of limitations for the crime of child exploitation. *See* Miss. Code Ann. § 99-1-5(1)(a) (Rev. 2020) ("The passage of time shall never bar prosecution against any person for … exploitation of children as described in Section 97-5-33[.]").

¶43. Follett does not claim he was surprised or "unfairly prejudice[d]" at trial by the date variance, nor do we find that to be the case. Follett denied knowing anything about the child pornography at all so the timing is not relevant to that defense. Further, although Follett's trial counsel argued at the directed verdict stage "that someone else could have had access to [Follett's] Gmail account" after his cell phone was stolen, trial counsel made no argument about any significance in the November 10, 2019 account-deactivation date as compared to the November 18, 2019 date contained in the indictment. We do not find that Follett was unfairly prejudiced. He had adequate notice of the charges against him and was able to prepare his defenses.

¶44. As we found with respect to Count 1, Follett's insufficiency-of-the-evidence arguments likewise fail with respect to Count 2. Viewing the evidence in the light most favorable to the prosecution, we find that there is sufficient evidence for a rational juror to find beyond a reasonable doubt that Follett knowingly possessed or knowingly accessed child pornography on his Google account.

## II. Weight of the Evidence

¶45. In the alternative, Follett asserts that his convictions are contrary to the weight of the evidence and asks this Court to reverse and remand for a new trial on both charges. In reviewing a challenge to the weight of the evidence, "[o]ur role as appellate court is to view

17

the evidence in the light most favorable to the verdict and disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017). We must be particularly mindful that "[w]e do not reweigh evidence. We do not assess the witnesses' credibility. And we do not resolve conflicts between evidence. Those decisions belong solely to the jury." *Id.* The trial court's decision to deny a new trial is reviewed only for an abuse of discretion. *Id.* at 292 (¶21).

### A. Child Exploitation Materials on Follett's Laptop (Count 1)

¶46. Regarding Count 1, Follett asserts that the weight of the evidence does not support that he possessed or accessed child pornography on his laptop. He points out that other people lived in the house where the laptop was found; the laptop was found in Follett's bedroom that doubled as a sewing room; Follett told the officers during his interview that he left the laptop running; a Netflix account on the laptop belonged to Follett's daughter, Stephanie; and "there was no showing that other members of the household did not access the laptop when Follett was absent."

¶47. But the jury also heard plainly contradictory evidence: Follett told the investigators that the laptop was his and he told them that no one else used it. As for the Netflix account, although it belonged to Stephanie, Investigator Boldig noted in her testimony that people who use Netflix commonly share passwords. She also testified that the laptop was password-protected. There is no evidence in the record that anyone other than Follett knew the password, or that any other household member exercised any control over the laptop.

18

¶48. It was for the jury to weigh all the evidence and resolve any conflicts between evidence. The jury did so and found Follett guilty. After reviewing this evidence as well as the evidence previously discussed in the light most favorable to the verdict, we find that the jury verdict with respect to Count 1 was not contrary to the overwhelming weight of the evidence. Further, we find that to allow this verdict to stand would not sanction an unconscionable injustice. Accordingly, we find that Follett's assertions on this point are not persuasive.

### B. Child Exploitation Materials on Follett's Google Account (Count 2)

¶49. Follett also asserts that his conviction pursuant to Count 2 regarding the child pornography on his Google account is contrary to the weight of the evidence. The jury heard the evidence that Follett told investigators that any child pornography on his cell phone was put there after his cell phone was stolen around Thanksgiving 2019 (November 28, 2019). But Investigator Rubisoff testified that the contraband files "arrived inside the Google account . . . around spring, early summer of 2019." It was the sole province of the jury to resolve the conflicting version of these events. We find that the jury's resolution on this issue with respect to Count 2 was not contrary to the overwhelming weight of the evidence, nor did the jury's resolution constitute an unconscionable injustice. We find that Follett's assignment of error on this point is without merit.

¶50. In sum, upon considering the evidence in this case in the light most favorable to the verdict, we cannot say it is contrary to the overwhelming weight of the evidence such that to allow it to stand would sanction an unconscionable injustice. Accordingly, we find that

19

the trial court did not abuse its discretion by denying Follett's motion for a new trial. We find that Follett's weight-of-the-evidence assignment of error is without merit.

¶51. For all the reasons addressed above, Follett's convictions and sentences are affirmed.

¶52. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**